STARK v. STAFFEN. (No. 419.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 1, 1919.)

1. BOUNDARIES ⬤═35(3) — EVIDENCE — ADMISSIBILITY.

In a suit to determine boundary line, testimony of one who had assisted surveyors in running the line many years previously, had lived near, and knew the claims of parties, one being his uncle, relating to the boundary line, was properly admitted before the jury.

2. APPEAL AND ERROR ⬤═1001(1)—REVIEW —EVIDENCE.

Where there was abundant testimony to sustain verdict locating boundary line, verdict will not be disturbed on appeal.

Appeal from District Court, Orange County; W. T. Davis, Judge.

Trespass to try title by Charles Staffen against W. H. Stark. Judgment for plaintiff, and defendant appeals. Affirmed.

Holland & Holland, of Orange, for appellant.

V. A. Collins, of Beaumont, for appellee.

WALKER, J. This is a suit brought in trespass to try title, by which appellee seeks to recover from appellant 120 acres of land alleged to be a part of the Stephen Jett league in Orange county, Tex. In reality, it is a suit to determine the location of the dividing line between the Jett league and the Dykes survey. The appellee claims no land on the Dykes survey, and the appellant claims no land on the Jett league. This case was submitted to the jury on one issue, as follows:

"Is the line as claimed by the plaintiff, Charles Staffen, or the line as run by Mr. Cox, the original south boundary line of the Stephen Jett survey?" To which the jury answered, "As claimed by Staffen."

On this answer, the court entered judgment for appellee for the title and possession of the land as described in his petition.

On this appeal appellant asserts two propositions, to wit:

(a) "The burden of proof rested upon the appellee to establish by legal evidence the fact that the land sued for was located on the Stephen Jett league, and failing to offer any probative evidence as to the true location of the Stephen Jett league, and it being shown by undisputed evidence that a portion of the land sued for was in fact located on the Wesley Dykes survey owned by appellant, and the ownership of the portion of the land sued for being the only dispute, the trial court should have instructed a verdict for appellant."

(b) "In the state of the record, it being an undisputed fact that a portion of the land sued for was located on the Wesley Dykes survey, admittedly owned by appellant, and not located upon the Stephen Jett league, and no probative evidence having been offered showing a conflict between the said surveys or that the said land was part of the Stephen Jett league, judgment for appellee for this portion of the tract of land sued for is without evidence to support it."

On the location of this line, appellee introduced the following testimony by Joe Foreman:

"My name is Joseph H. Foreman. I am related to one George Foreman, tax assessor here. He is my brother. I have lived in this county all my life, 47 years. * * * I think when the fence on the south of the Staffen tract was first put up there Uncle Joseph Bland built it. Old man Joe Bland was my uncle. I remember the time that fence was built there. * * * It was a good many years ago. It was a good

many years ago when that fence on the south line was built by old man Joseph Bland. He lived out there then. He did not live on the Jett tract. When he built that fence, he built it clear across the south part of the tract that Mr. Staffen claims here. * * * I think I know where the Jett south line is. At least, it was established as the old line of the Jett survey. When Uncle Joseph Bland bought that land, he built it on the line that had been considered in the community as the Jett line. I know where that old gum tree stood down there. It is dead and rotted away, but I can show any one where it stood. That gum stood right on the south line of the Jett survey right by it. I have seen that tree lots of times when it was standing. * * * The first time I had my attention called to that tree, it was about 25 years ago. It was then considered on the south line of the Jett survey. Joseph Bland was at one time county surveyor of this county. I have heard my uncle Joseph Bland say that was the south line of the Jett survey. That fence was built there on that line. He didn't claim the Jett, but he claimed another survey south of there, and he built that fence for his line fence. That would be the north line of the Dykes. It would be the south line of the Jett and the north line of the tract he had on the Dykes. He was a very old man when he died. He has been dead 2 or 3 years. * * * He was personally present when the fence was being built. Sometimes he would be out there, and sometimes he wouldn't. He went ahead and staked it off, and he had another man to put up the fence, and sometimes he would come around where they were at work, and sometimes he wouldn't. * * * I have known personally where the south line of the Jett was reputed to be for about 30 years. I have owned land on the Jett that runs down to the south line of the Jett, that runs down as far south as Mr. Staffen's land. We have owned that land about 30 years. My father bought it. I have always considered my south line the same as Mr. Staffen's south line. If my south line is the same as Mr. Staffen's south line, I suppose the Staffen tract will all be on the Stephen Jett survey. I have had the line that I claim on the Jett fenced for about 30 years. * * *

"My fence joined my Uncle Joe Bland's fence on the south line, he holding on the Dykes and I holding on the Jett, considered that the line about 30 years ago. * * * I have helped run the south line of the Jett with a surveyor. I couldn't tell you when I helped run it. It was when I was a boy. We ran that line right where that sweet gum is. We saw signs of the line along there then. We saw marks on the trees right along the line we ran. I was with old man Cleveland and old man Morgan. I have been with both them when they surveyed it. Cleveland was a surveyor. I have been with both these men when they ran what they claimed to be the south line of the Jett. * * * My father bought from Hugh Ocheltree. This was the line he was running for the Hugh Ocheltree tract when I helped survey it. I don't know how many marks or signs I saw at that time; I saw a good many. I saw some hacks on some trees. I couldn't tell you what it was, whether it was X's or S's, or what, just marks

on trees. I found them along regular in a straight line. They looked to me like they were pretty old then. They were healed over and cured up. I found some marks on this particular old gum. * * * I found some marks on both sides, some of the trees going to the east and some to the west, all going along in the same straight line. My father was along at the time we surveyed that land. My father got Cleveland to come out there and survey it. I don't recollect whether my Uncle Joe Bland was along or not. There were several along, but I don't know who all they were. When my Uncle Joe bought the land on the Dykes, he recognized the same line Cleveland ran for our south line there. I suppose he recognized my father's line as run by Cleveland as being the true line. That is where he put the fence. It was about the time my father bought that land that we were trying to locate that south line there. * * * On that line that we ran all trees to the east and trees to the west of that old gum we found marks, and they looked old then. * * *

"Q. I will ask you if Joe Bland ran this fence so as to inclose the land he claimed at that time? A. Yes, sir; I couldn't answer otherwise."

[1, 2] The appellant introduced two surveyors, T. G. B. Cox and T. B. Daniels. They located the line between the Jett and Dykes as contended for by appellant. This testimony by Mr. Foreman was properly admitted before the jury, and it was for the jury to decide from all the facts before them the true location of this line. There being abundant testimony in the record to sustain the verdict of the jury, we will not disturb it.

Finding no error in the record, this case is affirmed.